**SO ORDERED.**

**SIGNED this 26 day of July, 2012.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

MARGARET P. HOLDER,                     CHAPTER 13
                                         CASE NO.  10-02187-8-RDD
   DEBTOR

### ORDER GRANTING MOTION FOR SECTION 362(k) SANCTIONS

Pending before the Court is the Motion for Sanctions and Damages for Violation of 11 U.S.C. § 362 and Damages in a Core Proceeding filed by Margaret P. Holder, (the "Debtor") on May 11, 2012 (the "Motion for Sanctions") and the Response to Debtor's Motion for Sanctions and Damages for Violation of 11 U.S.C. § 362 and Damages in a Core Proceeding, and Request for Hearing filed by First South Bank ("FSB") on June 7, 2012 (the "Response").  The Court conducted a hearing on June 26, 2012 in Greenville, North Carolina to consider the Motion.

### BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on March 19, 2010.  FSB was listed as a creditor on the Debtor's creditor matrix. On August 17, 2010, the case was converted to a case under Chapter 13.  On August 25, 2010, FSB filed a proof of claim in the amount of $7,643.77, based on a guaranty agreement signed in

connection with an unsecured commercial loan.  Ms. Gwen Calhoun ("Ms. Calhoun") signed the proof of claim as Vice President of FSB.  On March 8, 2011, the Court entered the Order Granting Minutes and Motion to Confirm Chapter 13 Plan.  FSB is treated as an unsecured creditor under the Debtor's Chapter 13 Plan.

The Debtor, along with her daughter, established 2 Margarets, LLC as a business that provided concession foods and sold beer and wine.  On July 8, 2008, 2 Margarets, LLC executed a one-year line of credit with FSB in the amount of $10,000.00. On July 9, 2009, 2 Margarets, LLC executed and delivered to FSB a Change in Terms Agreement in the principal amount of $9,417.35. 2 Margarets, LLC and the Debtor defaulted on the loan obligation. The Debtor executed a guaranty agreement, guaranteeing obligations of 2 Margarets, LLC .

At the hearing, the Debtor testified that since filing bankruptcy, FSB has repeatedly sought payment from her personally on the commercial loan.  She testified that Mr. James Johnston, ("Mr. Johnston") a Vice President and Commercial Banking Officer with FSB, called her at her residence and on her cell phone subsequent to the petition date seeking satisfaction of the Debtor's personal obligation on the commercial loan.  The Debtor represented that she advised Mr. Johnston that she was a debtor in a bankruptcy proceeding and that he should contact her bankruptcy counsel. The Debtor testified that since filing bankruptcy, Ms. Calhoun has called her approximately five times at her residence and on her cell phone.  Each time Ms. Calhoun called, the Debtor informed her that she was a debtor in a bankruptcy proceeding and that she should contact her bankruptcy counsel. She further testified that Mr. Johnston contacted her an additional time, demanding satisfaction of the Debtor's obligations as a guarantor.  Once again, the Debtor advised Mr. Johnston that she was a debtor in a bankruptcy proceeding and that he should contact her bankruptcy counsel. The Debtor

testified that Mr. Johnston was aggressive and assertive in questioning her about the status of her bankruptcy and when she was going to make payment on the loan. She represented that she was never questioned about 2 Margarets, LLC's business assets. The Debtor contends she has suffered actual damages including mental and emotional distress from the repeated harassment by FSB's officers and agents, and the tension and worry about being sued. Specifically, the Debtor represents that she has been diagnosed with stress related colitis and erosive esophagitis which she believes is related to FSB's continuing contacts. Her pharmacy bill is approximately $100.00 per month.

At the hearing, Counsel for the Debtor ("Counsel") testified as to his communications with FSB. Counsel represented that approximately one month following the petition date, while he was at FSB for personal banking matters, he was approached by Mr. Johnston in the lobby. He testified that Mr. Johnston questioned him as to whether the Debtor had filed a bankruptcy petition. He advised Mr. Johnston that the Debtor was currently in a bankruptcy proceeding. On June 14, 2010, the Bankruptcy Administrator filed a Motion to Dismiss the Debtor's Chapter 7 Proceeding for Abuse. Mr. Johnston called Counsel to discuss the Motion to Dismiss. Counsel testified that he explained to Mr. Johnston that he did not believe the Chapter 7 proceeding would be dismissed, and if necessary, Counsel would file a motion to convert the case to a proceeding under Chapter 13. Mr. Johnston approached Counsel a second time, while Counsel was at FSB on personal banking matters, and questioned him as to whether the Debtor's bankruptcy case had been dismissed. Counsel explained to Mr. Johnston that the case had not been dismissed, and that he should obtain legal counsel.

At the hearing, Mr. Johnston testified that he is a Vice President and Commercial Banking Officer with FSB. He testified that on March 22, 2010, he called the Debtor regarding the business

3

loan payment and that the Debtor informed him that she had filed for bankruptcy protection. He represented that each time he contacted the Debtor he did so for the purpose of obtaining information about the business loan debt and not information regarding the Debtor's personal guaranty obligation. He represented that each time he spoke with the Debtor, she informed him that the business did not intend to make payment on the loan. He testified that Ms. Calhoun is the Special Assets Coordinator and is a Vice President of FSB. Mr. Johnston represented that when a customer files for bankruptcy, the matter is referred to Ms. Calhoun who handles bankruptcy matters. Accordingly, he testified that once he learned the Debtor had filed a bankruptcy petition he turned the matter over to Ms. Calhoun. He represented that each time he contacted the Debtor he did so for the purpose of obtaining information regarding the non-debtor business 2 Margarets, LLC. He admitted approaching Counsel in the FSB lobby and calling him regarding the Debtor's bankruptcy status.

On July 19, 2010, FSB filed a state civil action in Beaufort County, North Carolina District Court against the Debtor's business 2 Margarets, LLC and the Debtor personally. In the Complaint, FSB sought joint and several liability against the Debtor in the amount of $7,659.86, plus post-maturity interest, and attorneys' fees. In connection with the complaint, FSB served a civil summons directly upon the Debtor individually and the Debtor's business 2 Margarets, LLC. FSB served the Debtor a total of four times by certified mail. Service was addressed two times directly to the Debtor and two times to the Debtor's business. Ms. Calhoun verified the complaint as Assistant Vice President-Special Assets for FSB.

The Debtor alleges FSB willfully violated the automatic stay provided in § 362 by its repeated attempts to collect on a prepetition debt. The Debtor alleges she suffered emotional distress

4

caused by the repeated harassment by FSB's officers and agents, and the tension and worry about being sued.

FSB responds that all communications made to the Debtor through FSB's officers were solely related to her position as owner/operator of 2 Margarets, LLC and did not relate to collecting any debt personally from the Debtor. FSB admits that filing the state civil action and service upon the Debtor personally was an inadvertent error and that its true intention was to serve the Debtor as owner/operator of 2 Margarets, LLC. FSB has since dismissed the state civil action against the Debtor personally. FSB contends that the state civil action filed and dismissed against the Debtor nearly two years ago has caused no harm to the Debtor as the Debtor has not filed any pleadings nor taken any other action in this bankruptcy proceeding or in the state civil action until this Motion for Sanctions was filed nearly two years after the events alleged.

## DISCUSSION

Section 362(a) of the Bankruptcy Code imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under" title 11. 11 U.S.C. § 362 (a)(6). The Bankruptcy Code also provides that any "individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1).

This Court has held "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC (In re Lofton)*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (citing *Citizens Bank v. Strumpf*, 37 F.3d 155 (4th Cir.1994), *rev'd on other grounds* 516 U.S. 16, 11 (1995)). Furthermore, "[i]f the creditor

intentionally acts and its actions violate the automatic stay, the creditor's acts are willful." *In re Jones*, No. 06-00380-8-RDD, at 3 (Bankr. E.D.N.C. June 27, 2007).

      Based on the evidence, the Court finds the Debtor has proven that FSB willfully violated § 362 by a preponderance of the evidence. FSB received proper notice of the Debtor's bankruptcy petition. Postpetition, the Debtor received numerous phone calls from FSB. Upon receiving each phone call, the Debtor notified Mr. Johnson and Ms. Calhoun that she was a debtor in a bankruptcy proceeding and to contact her bankruptcy counsel. In addition to the phone calls, FSB filed a state civil action in Beaufort County, General Court of Justice District Court Division against the Debtor personally, seeking to recover $7,659.86 plus post maturity interest and attorneys' fees from the Debtor and 2 Margarets, LLC. Mr. Johnston testified that this was an inadvertent error on behalf of FSB. The Debtor personally guaranteed the debt of 2 Margarets, LLC and was protected by the automatic stay when the phone calls were made and the state civil action filed. Though FSB may not have intended to violate the automatic stay, it fully intended to make the phone calls and file the state civil court action. The Debtor testified that when the officers of FSB called they asked when she personally was going to be able to make payment on the debt and did not inquire as to any assets of 2 Margarets, LLC.

      FSB routinely encounters debtors seeking relief under the Bankruptcy Code. Based on the testimony of Mr. Johnson, when a customer files for bankruptcy, FSB's policy is to send the account to Ms. Calhoun, who is responsible for handling bankruptcy accounts. Yet, this procedure did not protect the Debtor from receiving numerous phone calls and having a state court civil action filed against her personally. Therefore, the Court finds that FSB does not have proper procedures in place, for a bank of its size, which regularly collects debts and receives bankruptcy notices. If FSB would

have had proper procedures in place, the state court civil action and civil summons against the Debtor individually would have never been filed and most likely, the phone calls to the Debtor would not have been as numerous.

Upon finding willful violations of the automatic stay, the Court may award actual damages, which include monetary damages "to compensate for actual emotional distress caused by a creditor's violation of the automatic stay." *In re Thorpe*, No. 11-00862-8-SWH, 2011 WL 5909403 at *2 (Bankr. E.D.N.C. May 17, 2011) (citing *In re Kirkbride*, Case No. 08-00120-8-JRL, 2010 WL 4809334 (Bankr. E.D.N.C. Nov. 19, 2010) (allowing $10,000.00 damages for humiliation and embarrassment caused by a creditor's actions)). The Court may also award punitive damages for a willful violation of the automatic stay for the purpose of causing "'a change in the creditor's behavior . . . .'" *In re Sands*, No. 10-12205C-13G, 2011 WL 3962491 at *3 (Bankr. M.D.N.C. April 1, 2011) (quoting *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001)).

The Court finds § 362(k) allows for recovery of actual damages, including emotional distress. *See In re Thorpe*, No. 2011 WL 5909403 at *2; *In re Kirkbride*, 2010 WL 4809334 at *5; *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004). Evidence of emotional distress need not rise to the level necessary to prove intentional infliction of emotional distress or negligent infliction of emotional distress under North Carolina law. The Debtor testified she experienced mental and emotional distress from the repeated harassment by FSB's officers and agents, and the tension and worry about being sued.

Therefore, the Court finds the Debtor has proven by a preponderance of the evidence that FSB willfully violated the automatic stay provided by § 362. The Motion for Section 362(k) Sanctions is **GRANTED**. The Debtor is entitled to actual damages in the amount of $2,500.00. Of

7

this amount, FSB shall pay $1,500.00 directly to the Debtor and $1,000.00 to the Chapter 13 Trustee, to be added to the dividend to be paid to unsecured creditors, to be paid within seven (7) days of the date of this Order.

Further, punitive damages are not appropriate in this case.

The Debtor's attorneys, Jane Leah Weatherly, Esquire, and Edwin M. Hardy, Esquire, are entitled to attorneys' fees in the total amount of $2,500.00, to be paid within seven (7) days of the date of this Order.

**SO ORDERED.**

**END OF DOCUMENT**